***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The carrier at risk is AAIC. Risk Enterprise Management Limited is the third party administrator.
2. At all relevant times, defendant-employer regularly employed three or more employees and was bound by the North Carolina Worker's Compensation Act. The employer-employee relationship existed between the employer and the employee on or about March 9, 2001, the date of the alleged compensable injury.
3. Plaintiff continued to work for the employer from March 9, 2001 until November 26, 2001. Plaintiff has not worked for defendant-employer since November 26, 2001.
4. Plaintiff's average weekly wage is $285.08.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was fifty-one years old at the time of the hearing before the Deputy Commissioner. She had represented on her application for employment with defendant-employer that she graduated from high school.
2. Plaintiff's work experience included three years of employment as a quality control inspector, thirteen years employment as a purchasing agent assistant, eleven years experience as a credit union employee on the loan committee, and over five years experience as a nurse's aide or certified nurse's assistant and home health care worker.
3. Plaintiff has a certified nurse's assistant's license or certificate and also obtained a certificate in medication administration.
4. Plaintiff testified at the hearing before the Deputy Commissioner that on March 9, 2001 she lost her balance and fell while assisting a patient/resident. Plaintiff testified that as a result of the fall she injured her lower back.
5. Plaintiff did not seek any medical treatment until March 12, 2001, when she was examined by Dr. Fanta and plaintiff's statements to Dr. Fanta were as follows, as reflected in Dr. Fanta's records: "The patient tried to assist and move a resident when she felt the pain. She did not fall. Immediately the pain was not much, however on the second or third day starting feeling more pain and stiffness. She has difficulty to move her right wrist."
6. Plaintiff was examined by Dr. Keeling, an orthopaedist, on March 13, 2001.
7. A bone scan performed on March 15, 2001 to the right hand/arm showed an old stress fracture but no acute or new injury. On March 20, 2002 Dr. Keeling opined that the plaintiff could continue to work and diagnosed right wrist strain and also noted lower back pain.
8. On April 3, 2001 and April 17, 2001 plaintiff reported no back pain to Dr. Keeling. On April 17, 2001 Dr. Keeling released plaintiff to resume her normal activities and stated he would see her back in two weeks for what should be her final visit.
9. As of May 1, 2001, plaintiff's right wrist pain had resolved. At this time, plaintiff began complaining of chronic lower back pain. Weight reduction was discussed with plaintiff. Physical examination was basically negative for any acute back injury or signs of a disc injury.
10. On June 19, 2001 plaintiff's MRI was interpreted as negative for any herniated disc or acute injury but did show degenerative arthritic findings that are not related to the incident of March 9, 2001. Plaintiff was instructed to continue working but to do no excessive lifting and to obtain assistance with lifting patients.
11. On July 17, 2001 plaintiff complained of intermittent back pain. Dr. Keeling recommended plaintiff continue working and stated that she should get better over time. Dr. Keeling stated that plaintiff had no disc injury but was experiencing chronic back pain.
12. On September 18, 2001 plaintiff reported a flare up of back pain. There were no objective findings on physical examination. Dr. Keeling felt the plaintiff was at maximum medical improvement at that time and rated plaintiff with a 5% permanent partial impairment to the back and felt that she was at maximum medical improvement or had otherwise plateaued in her condition. Plaintiff's wrist had healed and there is a 0% impairment rating to her wrist.
13. Dr. Keeling eventually took plaintiff out of work on September 19, 2001 until he could see the plaintiff the following Tuesday. Plaintiff was released to return to work by Dr. Keeling on September 24, 2001.
14. Other than a restriction of no heavy lifting without assistance, in Dr. Keeling's opinion the plaintiff could continue to work as a nurse's aide/CNA for defendant-employer and continue to do what she was doing for defendant-employer.
15. On October 30, 2001, plaintiff reported resolving lower back pain, her physical examination was normal, and Dr. Keeling stated that he would see her for a final visit in one month. Plaintiff continued to work without reports of any problems.
16. Plaintiff continued to work as nurse's aide/CNA for defendant-employer earning her normal wages and working her normal hours from March 9, 2001 to November 26, 2001, except for the period from approximately September 19, 2001 until approximately September 24, 2001 as noted above.
17. In late November, 2001 all employees of defendant-employer were notified that they would need to report to work on an alternating and short-term basis thirty minutes early until a new employee could be hired for the morning shift. Plaintiff probably would have had to report to work for approximately one to two times before the new employee was hired. Defendant-employer told plaintiff that she would not be required to do any job duties beyond her restrictions or be required to do anything that she otherwise had not done since March of 2001. Plaintiff and her husband (who worked the same shift as plaintiff) refused to report to work as scheduled and stated that they would not under any circumstances report to work thirty minutes early.
18. Both plaintiff and her husband walked out of work on November 26, 2001 after informing their employer that they would not report to work thirty minutes early on even one occasion, refusing to continue to work for the defendant-employer, and effectively ending their employment at that time. The actions of plaintiff and her husband effectively amounted to insubordination and refusal to work as requested. Plaintiff's refusal to perform the work as requested was unrelated to her compensable injury, and such misconduct and fault on behalf of the plaintiff would have resulted in the termination of any other non-disabled employee.
19. Plaintiff applied for unemployment compensation benefits in late November, 2001, immediately following her leaving work with defendant-employer. Plaintiff represented in her application for unemployment compensation benefits that she was willing and able to work.
20. Plaintiff received unemployment compensation benefits from December, 2001 until in or around March 2002, when plaintiff's benefits were finally denied on appeal due to a finding that plaintiff was unemployed due to her own misconduct in showing a "willful disregard of her duty to follow the reasonable instructions of her employer."
21. While receiving unemployment compensation benefits from December, 2001 until around March, 2002, plaintiff reported that she applied for numerous jobs as a nurse's aide/certified nurse's assistant, the same job she was performing for defendant-employer. Plaintiff also applied for numerous jobs in factory and distribution positions, including a job with Miller Brewing Company. In pursuing these various jobs while receiving unemployment compensation benefits, plaintiff continued to represent that she was willing and able to perform all of the foregoing jobs.
22. But for plaintiff's own misconduct in willfully refusing to follow the reasonable instructions of her employer, plaintiff could still be working as a certified nurse's assistant/nurse's aid for employer.
23. Plaintiff received no medical treatment from November 30, 2001 until March 1, 2002. There was no significant change in plaintiff's condition after November 26, 2001 for any injuries or conditions causally related to the incident of March 9, 2001. Dr. Keeling testified that plaintiff could continue to work after November 2001 at any job consistent with his permanent restrictions of no heavy lifting and avoiding excessive bending.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On March 9, 2001, plaintiff sustained an injury by accident arising out of and in the course of her employment with the defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's injury by accident of March 9, 2001, she has sustained a 5% permanent partial disability impairment to her back. N.C. Gen. Stat. § 97-31.
3. Plaintiff's medical treatment as a result of her injury by accident of March 9, 2001, was necessary to effect a cure, give relief and did lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
4. On November 26, 2001, plaintiff refused suitable employment by refusing to come to work 30 minutes early for a temporary time. N.C. Gen. Stat. § 97-32.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an approved attorney fee below, defendants shall pay to plaintiff, the sum of $190.63 per week for 15 weeks on account of her 5% permanent partial disability rating to her back. This amount has accrued and is to be paid to plaintiff in a lump sum, minus the approved attorney fee.
2. An attorney fee of 25% of the compensation awarded to plaintiff in paragraph one of this Award is approved for plaintiff's counsel. The defendants shall deduct said amount and send directly to plaintiff's attorney.
3. Defendants shall pay for all medical treatment incurred or to be incurred as a result of plaintiff's compensable injury by accident of March 9, 2001, for so long as said treatment effects a cure, gives relief or lessens plaintiff's period of disability.
4. Defendants shall pay the costs, including an expert witness fee of $385.00 to Dr. Wayne Keeling.
This the 6th day of May 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DCS/mlb